UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISAAC WILDER,

        Petitioner,

v.                                  Case No. 3:19-cv-614-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Isaac Wilder, an inmate of the Florida penal system, initiated this action on May 21, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Wilder challenges a 2011 state court (Duval County, Florida) judgment of conviction for first degree murder and attempted second degree murder. He raises eight claims. See Petition at 4-24. Respondents have submitted a memorandum in opposition to

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

the Petition, <u>see</u> Answer in Response to Order to Show Cause (Response; Doc. 8) with exhibits, <u>see</u> Docs. 8-1 through 8-11. Wilder filed a brief in reply. <u>See</u> Reply (Doc. 9). He also submitted exhibits. <u>See</u> Docs. 9-1 through 9-19.  This action is ripe for review.

## II. Relevant Procedural History

On August 26, 2008, at the conclusion of a trial in Duval County case number 16-2005-CF-016108-AXXX, the jury found Wilder guilty of first degree murder (count one), attempted second degree murder with a firearm, a lesser-included offense (count two), and petit theft, a lesser-included offense (count three). <u>See</u> https://core.duvalclerk.com, <u>Isaac Wilder v. State of Florida</u>, case no. 16-2005-CF-016108-AXXX (4th Fla. Cir. Ct.); Doc. 8-5 at 266-70, Verdicts. On September 24, 2008, the court sentenced Wilder to life imprisonment for count one, a term of imprisonment of thirty years with a thirty-year minimum mandatory term for count two, and a sixty-day term of imprisonment for count three. Doc. 8-7 at 16-23, Judgment. The court ordered that the sentences for counts two and three run concurrently with the sentence for count one. <u>Id.</u>

Wilder, with the benefit of counsel, appealed his convictions for first degree murder, attempted second degree murder, and petit theft on the grounds that the trial court erred when it denied a motion to suppress evidence of inculpatory statements he made in a custodial interrogation by law enforcement, after he had invoked his right to counsel. On July 7, 2010, the

2

First District Court of Appeal (First DCA) reversed and remanded the case for a new trial with directions that the court grant the motion to suppress. Wilder v. State, 40 So. 3d 804 (Fla. 1st DCA 2010). The court issued the mandate on August 23, 2010. See onlinedocketsdca.flcourts.org, Isaac Wilder v. State of Florida, 1D08-5030 (Fla. 1st DCA).

On June 24, 2011, at the conclusion of a second trial, the jury found Wilder guilty of first degree murder (count one) and attempted second degree murder with a firearm, a lesser-included offense (count two). Doc. 8-2 at 2-5, Verdicts. On August 5, 2011, the court sentenced Wilder to life imprisonment for count one and a term of imprisonment of thirty years with a thirty-year minimum mandatory term for count two, to run concurrently with the term for count one. Id. at 71-77, Judgment.

On direct appeal, Wilder, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it failed to instruct the jury on attempted voluntary manslaughter, as a lesser-included offense of attempted second degree murder. Doc. 8-7 at 50-73. The State filed an answer brief. Id. at 75-94. The First DCA affirmed Wilder's convictions and sentences on August 22, 2012, id. at 96, and issued the mandate on September 7, 2012, id. at 98.

On December 18, 2012, Wilder filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Id. at 104. He filed amended and supplemental Rule 3.850 motions on June 11, 2013, November

3

18, 2013, and May 14, 2015. Docs. 8-7 at 186; 8-8 at 48; 8-9 at 42. In the request for postconviction relief, Wilder asserted that his trial counsel was ineffective because he failed to: call Leroy Brown as an alibi witness at trial (ground one), Doc. 8-8 at 51; call Anthony Conley as a defense witness at trial (ground two), id. at 57; investigate and object to the testimony of State witness Demetrius Wilder (ground three), id. at 63; object and move for a mistrial when the prosecutor misrepresented evidence related to letters in violation of Giglio[3] (ground four), id. at 68; object and move for a mistrial when the prosecutor bolstered the testimony of State witnesses and shifted the burden of proof from the State to the defense in closing argument (ground six), id. at 77; and adequately argue and move for a judgment of acquittal (ground twelve), id. at 88. He also asserts that the prosecutor: violated Giglio (ground five), id. at 71; bolstered the testimony of State witnesses and shifted the burden of proof from the State to the defense (ground seven), id. at 79; and bolstered the testimony of Demetrius Wilder (ground eight), id. at 82. As grounds nine, ten and eleven, he asserted that the cumulative errors at trial and those committed by the prosecutor and defense counsel deprived him of his rights to a fair trial and due process of law. Id. at 83-88. Additionally, Wilder filed motions related to newly-discovered evidence of actual innocence. Docs. 8-7 at 147; 8-8 at 9, 94,

---

[3] Giglio v. United States, 405 U.S. 150 (1972).

139; 8-9 at 24, 85, 104; https://core.duvalclerk.com, <u>Wilder</u>, case no. 16-2005-CF-016108-AXXX. The state court denied his postconviction motions on August 21, 2017. Docs. 8-9 at 167-70; 8-10 at 1-16. On January 25, 2019, the First DCA affirmed the court's denial of postconviction relief per curiam, Doc. 8-11 at 95, and it denied Wilder's motion for rehearing on March 15, 2019, <u>see</u> onlinedocketsdca.flcourts.org, <u>Isaac Wilder v. State of Florida</u>, 1D17-3962 (Fla. 1st DCA). On April 5, 2019, the court issued the mandate. Doc. 8-11 at 103.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474.

The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Wilder's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter,

562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor,

7

529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

> ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S.
> 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016); <u>see</u> <u>Teasley v. Warden, Macon State Prison</u>, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020).  Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. A district court's obligation is "to train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing <u>Wilson</u>, 138 S. Ct. at 1191-92). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

9

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a §
2254 habeas action in federal court, a petitioner must exhaust all state court
remedies that are available for challenging his state conviction. See 28 U.S.C.
§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly
present[]" every issue raised in his federal petition to the state's highest court,
either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346,
351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state
prisoners must give the state courts one full opportunity to resolve any
constitutional issues by invoking one complete round of the State's established
appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> ""opportunity to pass upon and correct" alleged
> violations of its prisoners' federal rights.'" Duncan v.
> Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d
> 865 (1995) (per curiam) (quoting Picard v. Connor, 404
> U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To
> provide the State with the necessary "opportunity,"
> the prisoner must "fairly present" his claim in
> each appropriate state court (including a state supreme
> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the claim.
> Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan
> v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747-748, 111 S. Ct. 2546; Sykes,[6] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. 307, 316, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. 53, 60-61, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).

[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

> consideration on the merits of his procedurally
> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence
> of a showing of cause for the procedural default."
> <u>Carrier,</u> 477 U.S. at 496, 106 S. Ct. at 2649. "This
> exception is exceedingly narrow in scope," however,
> and requires proof of actual innocence, not just legal
> innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171
> (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per

curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test

before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part

<u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet the

prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243,

1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

   A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is
> a most deferential one." Richter, 562 U.S. at ---, 131
> S.Ct. at 788. But "[e]stablishing that a state court's
> application of Strickland was unreasonable under §
> 2254(d) is all the more difficult. The standards created
> by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review
> is doubly so." Id. (citations and quotation marks
> omitted). "The question is not whether a federal court
> believes the state court's determination under the
> Strickland standard was incorrect but whether that
> determination was unreasonable — a substantially
> higher threshold." Knowles v. Mirzayance, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied Strickland's
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by Strickland, the AEDPA adds

another layer of deference — this one to a state court's decision — when we are

considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Wilder asserts that he is "actually innocent" of the murder of Laserrio Lang and the attempted murder of Keonna Diamond based on newly discovered evidence (State witness Demetrius Wilder's letter, postmarked February 18, 2014), especially in light of the State's evidence presented at the 2011 trial. Petition at 4-9. He raised the claim in his motions related to newly discovered evidence. Doc. 8-9 at 26-29, 34 (Demetrius Letter), 87-90, 106-09. The postconviction court denied his request for postconviction relief with respect to the claim, stating in pertinent part:

> In the Motions alleging newly discovered evidence of actual innocence, Defendant raises the following allegations: (1) newly discovered witness Quinton Woods; (2) newly discovered witness Robert Lockwood; and (3) recantation by Demetrius Wilder. On June 13, 2017, the Court granted Defendant leave to amend to attach notarized copies of the affidavits from Demetrius, Quinton Woods, and Robert Lockwood. Defendant filed a Response to the Court's Order on June 23, 2017. In his Response, Defendant states the letter from Demetrius is not an affidavit, but just a letter and should be treated as such. Defendant did not address the affidavits of Quinton Woods or Robert Lockwood.

16

Initially, the Court finds Defendant's claim of actual innocence is not cognizable in a postconviction proceeding, as Florida does not recognize a freestanding actual innocence claim. Tompkins v. State, 994 So. 2d 1072, 1089 (Fla. 2008); see Elledge v. State, 911 So. 2d 57, 78 (Fla. 2005). Under Florida law, if new evidence surfaces after a direct appeal, a defendant may bring a newly discovered evidence claim. Tompkins, 994 So. 2d at 1089. As such, the Court reviews Defendant's claims under the recognized claim of newly discovered evidence.

. . . .

As to the letter from Demetrius,[8] Rule 3.850(c)

---

[8] The relevant portion of Demetrius's letter says:

I know you hate my guts, and there is nothing I can do to make this right. The reason I haven't wrote in so long is because it hurts too bad when I think about what me, Wink, and Malcolm did to you, but the case is over now. I know there isn't nothing I can do and I'm not going to lie to you Ice dog. Even if I could do something I probably wouldn't because we are in too deep now and I came back and told the truth about Malcolm killing La'Scerio they would probably hit me with perjury and some other sh[]t and I can[']t risk catching time and having them crackas take me from my kids. I have 3 of them now and I can't leave them out here alone. I know that may sound like a slap in the face seeing as how because of me you've been taken from your child[,] but I promise Isaac I truly love you. So[,] the least I can do is give you an explanation. Me and Malcolm didn't intend to set you up, and although it look like we framed you it wasn't intentional. Malcolm was truly scared, plus he didn't mean to kill La'Scerio. He told me he acted out of fear when he shot him and that chic, and I know this ain't gone [sic] make you feel better but you're stronger than Malcolm that's why I did what I did because Malcolm can't do time Isaac and you know that! And I'm not saying it[']s easier on you, especially knowing you ain't done sh[]t. But I know you dog and you'll find your way out that sh[]t because you're a thinker. I just don't want

---

states, "the defendant shall attach an <u>affidavit</u> from any person whose testimony is necessary to factually support the defendant's claim for relief. If the affidavit is not attached to the motion, the defendant shall provide an explanation why the required affidavit could not be obtained." Thus, despite the fact Demetrius wrote a letter to Defendant, Defendant is required to provide an affidavit to support his claim that Demetrius is, in essence, recanting his trial testimony. Because Defendant failed to properly amend this claim in accordance with the Court's instructions, he is not entitled to relief. <u>See</u> Fla. R. Crim. P. 3.850(f)(3); <u>Spera v. State</u>, 971 So. 2d 754, 761 (Fla. 2007) ("[W]hen a defendant's initial rule 3.850 motion for postconviction relief is determined to be legally insufficient for failure to meet either the rule[] or other pleading requirements, the trial court abuses its discretion when it fails to allow the defendant at least one opportunity to amend the motion.").

Even assuming <u>arguendo</u> the Court considered the letter, the Court finds it would not entitle Defendant to relief. Demetrius's testimony at trial essentially centered on the letters Defendant wrote to him while Defendant was incarcerated; the letters detailed the crimes with which Defendant was charged. (Ex. G at 698-739.)[9] Demetrius testified that he was at the party, but left at about 12:30 a.m. (Ex. G at 701.) He also testified that the next evening, Defendant called him to come and pick him up and when he did so, Defendant whispered to him that he was on the run for murder. (Ex. G at 704.) Even if the Court omitted Demetrius's testimony, there was still

---

Malcolm to go to prison because he can't do time but trust me dog he regret killing that ni[]a and lying on you. So[,] I'm writing to apologize on both of our behalfs [sic].

Doc. 8-9 at 34.

[9] Docs. 8-3 at 521-22; 8-4 at 1-35.

overwhelming evidence of Defendant's guilt, as detailed below.

Keonna Diamond ("Diamond"), the surviving victim, testified that she and Laserio Lang ("Lang"), the deceased victim, were in his car during the early morning of October 14, 2005. (Ex. G at 238.) Lang received some phone calls that night, and they drove in a red Toyota Corolla. (Ex. G at 240-41.) They stopped at an apartment and Lang went inside while Diamond stayed in the car. (Ex. G at 242.) From there, they drove to the Royal Cove apartments. (Ex. G at 242, 243.) Lang received more phone calls while they were driving there, but Diamond did not know with whom he spoke. (Ex. G at 243.) He received the last call as they were pulling into the apartments. (Ex. G at 243.) Lang waved at two African American males and then got back in the car. (Ex. G at 245.) The taller darker skinned man wore darker clothing and got in behind Diamond on the passenger side; the lighter skinned man got in behind Lang; he wore a Polo style shirt with blue and yellow horizontal stripes. (Ex. G at 244, 245.) The man behind Lang said, "I know some people who want what you got," and then there was a gun shot and Lang fell forward over the steering wheel. (Ex. G at 287.) Immediately after there was a second shot to her head; Diamond closed her eyes and played dead. (Ex. G at 255.) While she was in the hospital, Diamond talked to police, who showed her a group of photographs. (Ex. G at 277.) On one of the photographs, she wrote that it "looks like the light skinned guy." (Ex. G at 278.) Diamond testified she did not mean she was "100% sure it was the man, but it resembled him. (Ex. G at 280.)

Officer Mark Romano was part of the homicide team that investigated the case. (Ex. G at 361.) Officer Romano obtained phone records for Lang's phone and identified inbound calls to Lang's phone at 4:32 a.m. the day of the shooting. (Ex. G at 362-63.) The call came from Walker's phone. (Ex. G at 364.) Walker

admitted she had allowed Defendant to use her phone and did not see any others use it. (Ex. G at 393, 474.) Walker testified she attended a party at Malcolm's apartment, and that Defendant told her to say he had left the party early with a white woman. (Ex. G at 369-70, 400.) At one point, Walker left with Defendant and "B"; she drove them to the Royal Cove apartments believing they were going to purchase drugs. (Ex. G at 377.) Walker parked near the back of the complex under a carport and Defendant got out of the car with B. (Ex. G at 379.) Walker testified that B wore a black tee shirt and Defendant wore a multicolored Polo style of shirt. (Ex. G at 380.) She did not know how long they were gone, but when they returned, Defendant was wearing a tank top and carrying some clothing in his hands. (Ex. G at 380-81, 382.) Moreover, Walker stated they were sweaty and breathing heavily. (Ex. G at 395.) All three individuals returned to the party at the Lighthouse apartments, and Walker testified she saw a phone she had not seen before. (Ex. G at 383, 394.) Walker testified Defendant said something about having to get rid of the phone. (Ex. G at 396.)

Without objection, the testimony of Florida Department of Law Enforcement DNA analyst James Pollock ("Pollock") was read to the jury. (Ex. G at 516.) After explaining the process, Pollock said blood found in the parking lot matched Lang's profile. (Ex. G at 532.) He also examined samples from the rear driver-side-door latch. (Ex. G at 535.) The rear driver-side-door latch contained a mixture of two or more individuals, but no major contributor determined. (Ex. G at 537, 550.) The rear driver-side armrest contained a complex mixture, and Pollock could not exclude Lang or Defendant as possible contributors to the mixture. (Ex. G at 547.) The rear passenger-side armrest contained very little information, but excluded Lang and Defendant as contributors to the major profile, which was female. (Ex. G at 547.) The rear passenger-side-door latch excluded both Lang and Defendant as contributors. (Ex. G at 539.)

20

Malcolm testified that he lived at the Lighthouse Apartments with his roommate Victor, and his brother, Quintus, also lived in the same complex. (Ex. G at 574.) Malcolm held a party on October 13-14, 2005, and he remembered his brothers, Demetrius, Quintus, and Isaac being there, as well as Walker, Johnson, and Edwards. (Ex. G at 574-75.) People left the party at various times; Malcolm left as well and did not recall at exactly what time that occurred, but he recalled that he wore a white jersey with a red number 32 on it, and he went to Huddle House and the Gate gas station. (Ex. G at 576-77.) He went to get gas and more alcohol, but was not able to buy beer because it was after 2 a.m. (Ex. G at 577-78.) Malcolm testified he drove his roommate's car to the Gate station and went inside the store. (Ex. G at 578.)

The State showed a video taken from the Gate station surveillance system purporting to show Malcolm present in the store from 4:36 to 4:40 a.m. on October 14, 2005. (Ex. G at 579.) After he returned to his apartment, Walker, Johnson, and Defendant returned. (Ex. G at 582.) Malcolm testified that when they talked about the murder, Isaac said, "I did that shit." (Ex. G at 590.) When Malcolm asked why, Defendant did not give an answer. (Ex. G at 590.)

Edwards testified he attended the party at Malcolm's apartment. (Ex. G at 674.) His phone records showed calls that he said were with Defendant at 3:29, 3:37, 3:42, and 3:50 a.m. (Ex. G at 676.) He testified Defendant brought up a twenty-dollar debt and asked Edwards for his gun, saying, "I need to get my heat." (Ex. G at 677.) The gun was in a bag that he had left at Edward's home, which Edwards said he did not realize contained a revolver until he got the bag out to give Defendant. (Ex. G at 678.) Defendant picked up the bag from Edwards and gave him twenty dollars. (Ex. G at 678-79.) Edwards then returned to Malcolm's apartment. (Ex. G at 679.) While he was

there, Walker, Johnson, and Defendant came back. (Ex. G at 679-70.) Defendant had called him at 4:40 to say he was coming. (Ex. G at 680.) When he arrived, Defendant showed him three bullet casings and said that he might have two bodies. (Ex. G at 681.)

Thus, there was overwhelming evidence of Defendant's guilt at trial, aside from Demetrius's testimony. Further, Demetrius's letter attached to the instant Motions consists of hearsay statements allegedly made by Malcolm, which are inadmissible. Thus, even if the Court considered the letter, Defendant would not be entitled to relief.

Doc. 8-10 at 8-12 (footnote omitted). The First DCA affirmed the postconviction court's denial of relief and denied his motion for rehearing.

To the extent that the appellate court decided Wilder's claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wilder is not entitled to relief on the basis of this claim.

---

[10] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1192.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Wilder's claim is without merit because the record supports the postconviction court's conclusion. The Eleventh Circuit has stated:

> To begin with, our precedent forecloses habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction "absent an independent constitutional violation occurring in the underlying state criminal proceeding." See Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002) (citation and internal quotation marks omitted); see also Cunningham v. Dist. Att'y's Office, 592 F.3d 1237, 1273 (11th Cir. 2010) ("[An] assertion of actual innocence, by itself, is not enough."); Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007). As we have explained, "[i]t is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial." Brownlee, 306 F.3d at 1065. And the Supreme Court has never held that a prisoner is "entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 392, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013).
>
> The prohibition on freestanding claims of actual innocence in a habeas petition respects the nature of our federal system: "Federal courts are not forums in which to relitigate state trials." Herrera v. Collins, 506 U.S. 390, 401, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (quoting Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). When reviewing a habeas petition, we "sit to ensure that individuals are not imprisoned in violation of the Constitution— not to correct errors of fact." Id. at 400, 113 S.Ct. 853. And "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas

review of freestanding claims of actual innocence." Id.
at 401, 113 S.Ct. 853.

Raulerson v. Warden, 928 F.3d 987, 1004 (11th Cir. 2019). Accordingly, Wilder

is not entitled to federal habeas relief on his actual innocence claim in ground

one.

## B. Grounds Two and Three

As ground two, Wilder asserts that counsel (Richard Randall Kuritz,

Florida Bar #972540) was ineffective because he failed to call Leroy Brown as

an alibi witness. Petition at 10-11. As ground three, he asserts that counsel

was ineffective because he failed to call Anthony Conley as a defense witness.[11]

Id. at 12-13. Wilder describes the purported testimony, stating:

> [Leroy Brown] would have testified he met the
> Petitioner in the Royal Cove Apartments at 3:50 am,
> 40 minutes before [the] murder occurred, they left the
> Royal Cove Apartments and met again in front of an
> apartment complex called Lighthouse Bay at 4:00 am,
> where he picked the Petitioner up and went to meet
> several female[] acquaintances. They arrived there
> between 4:10-4:15 am and he and the Petitioner
> remained there until sometime[] close to six o'clock
> am.
>
> . . . .
>
> Petitioner was accused of the murder of Lascerio Lang
> and attempted murder of Keona Diamond that

---

[11] According to the Florida Department of Corrections Offender Network, the
proper spelling of his surname is "Conley." www.dc.state.fl.us/OffenderSearch.

occurred between the times of 4:32 to 4:38 [on] October 14, 2005.

. . . .

[Anthony Conley] would have testified that Bobby Johnson (who was arrested as Petitioner's co-defendant) confessed to Anthony Con[]ley that he (Bobby Johnson) and Malcolm Wilder committed the murder of Lascerio Lang and attempted murder of Keona Diamond, and that Malcolm Wilder and State witness David Edwards were telling Bobby Johnson what to say to frame Petitioner and everything would be fine.

Id. at 11, 13. According to Wilder, Brown and Conley were available to testify at trial, and counsel knew what their testimony would entail. Id. at 11-12.

He raised the claims in his Rule 3.850 motion (grounds one and two). Docs. 8-8 at 51-62; 8-9 at 45-48, 130-33. The postconviction court ultimately denied his request for postconviction relief with respect to the claims, stating in pertinent part:

Defendant maintains counsel was ineffective for failing to call an alibi witness, Brown, to testify during trial. Defendant maintains Brown was on standby and present outside the courtroom during the trial.

At the conclusion of Defendant's case, the trial court inquired of Defendant whether he wanted any additional witnesses called and whether counsel failed to do something Defendant asked him to do. (Ex. G at 811-12.) Defendant responded in the negative. (Ex. G at 812.) Accordingly, Defendant cannot now go behind his sworn testimony to claim counsel was ineffective for failing to present this witness. Smith v. State, 21 So. 3d 72, 76 (Fla. 1st DCA 200) (holding "whether an

allegation is conclusively refuted by the record, [a court] may rely on the sworn testimony the defendant has given . . . ."); see also Thomas v. State, 838 So. 2d 535, 541 (Fla. 2003) (affirming denial of ineffective assistance of counsel claim where trial court found defendant agreed not to call witness and, thus, could not claim ineffective assistance of counsel based on his decision); Hall v. State, 10 So. 3d 170, 172 (Fla. 5th DCA 2009). Defendant is not entitled to relief.

       . . . .

Defendant maintains counsel was ineffective for [failing to] call[] Con[ley] as a witness. Defendant alleges Con[ley] would have testified that other individuals confessed to him that they committed the instant crimes.

As stated in Ground (1), at the conclusion of Defendant's case, the trial court inquired of Defendant whether he wanted any additional witnesses called, and whether counsel failed to do something Defendant asked him to do. (Ex. G at 811-12.) Defendant responded in the negative. (Ex. G at 812.) Accordingly, Defendant cannot now go behind his sworn testimony to claim counsel was ineffective for failing to present this witness. Smith, 21 So. 3d at 76. Furthermore, the trial court previous[ly] denied counsel's request to present the testimony of Con[ley] during Defendant's 2008 trial. (Ex. H at 1064-71.)[12] Based on the arguments presented during the 2008 trial, the trial court would not have permitted Con[ley]'s testimony in 2011, as the State again chose not to present Bobby Johnson ("Johnson") as a witness. (Exs. H at 1064; I.) Defendant is not entitled to relief.

---

[12] Doc. 8-11 at 31-38.

Docs. 8-9 at 170; 8-10 at 1. The First DCA affirmed the postconviction court's denial of relief and denied his motion for rehearing.

To the extent that the appellate court decided Wilder's ineffectiveness claims on the merits,[13] the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wilder is not entitled to relief on the basis of these ineffectiveness claims.

Nevertheless, even if the appellate court's adjudication of the claims is not entitled to deference, Wilder's ineffectiveness claims are without merit because the record supports the postconviction court's conclusion. There is a strong presumption in favor of competence when evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at

---

[13] <u>Wilson</u>, 138 S. Ct. at 1192.

690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Wilder must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

The record reflects that Wilder filed counseled motions to transport Leroy Brown (FDOC #J08489) and Anthony Conley (FDOC #J36586), who were incarcerated in the Florida Department of Corrections, for the purpose of testifying at the 2011 trial. Doc. 8-1 at 88, 92. In the motions, Wilder asserted that their testimony was "required" during the trial. Id. The court granted the

motions. Id. at 90, 94. After the State rested its case, the court asked Wilder

whether he intended to testify, Doc. 8-4 at 67, and commented:

> And you have an outstanding lawyer who is very
> skilled at what he does, and I am sure he has spoken
> with you at length about this matter, but I want to talk
> to you myself just a moment.

Id. The defense recalled State witnesses Keonna Diamond (the victim of the

attempted murder) and Jacksonville Sheriff's Office Detective Glen

Warkentien and called Sonya Jeffers (a private investigator Wilder had hired).

After the defense rested its case, the following colloquy ensued:

> [DEFENSE COUNSEL]: Judge, I've spoken
> with my client, and those are the only witnesses that
> we have decided to call.

> THE COURT: All right. Mr. Wilder, if you will
> again please come forward, sir. I'm going to ask you to
> again raise your right hand to be sworn, please.

> (The defendant was sworn in by the clerk).

> THE COURT: All right. And, Mr. Wilder, the
> last time I spoke with you, of course, you had indicated
> you chose not to testify; is that right?

> THE DEFENDANT: Yes, sir.

> . . . .

> THE COURT: That's all right. I wanted to ask
> you specifically, of course, your lawyer called Detective
> Warkentien, [Jeffers] the investigator that he had
> employed and then also Ms. Diamond. Were there any
> other witnesses that you asked your lawyer to call that
> he refused to call?

> THE DEFENDANT: I can't -- he didn't refuse to call none of them, I'm just really like right now wrestling with one issue myself with one witness because --
>
> THE COURT: And that's fine, and I understand that. And understanding that decisions have to be made during the course of trial at every stage, and that's true in every trial, my question is, has your lawyer failed to do something you have asked or, in your opinion, instructed him to do?
>
> THE DEFENDANT: Oh, no, sir. No, sir.

Id. at 114-15. A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court).

On this record, Wilder has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming arguendo deficient performance by defense counsel, Wilder has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called Leroy Brown and/or Anthony Conley as defense witnesses. His ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Wilder is

not entitled to federal habeas relief on his ineffectiveness claims in grounds two and three.

## C. Ground Four

As ground four, Wilder asserts that counsel was ineffective because he failed to object to Demetrius's "tainted" testimony at the 2011 trial. Petition at 14. According to Wilder, Demetrius's 2011 trial testimony "changed significantly" from his 2008 trial testimony because he heard other witnesses testify when the trial judge permitted him back into the courtroom after his testimony at the 2008 trial. Id. at 15. He raised the claim in his Rule 3.850 motion (ground three). Docs. 8-8 at 63-68; 8-9 at 48-51, 133-36. The postconviction court ultimately denied his request for postconviction relief with respect to the claim, stating in pertinent part:

> Defendant maintains counsel was ineffective for failing to object to the testimony of Demetrius, because his testimony from 2008 substantially differed from the testimony he gave in 2011. Specifically, Defendant states Demetrius testified to more details about the offenses than what he testified to during the 2008 trial. Defendant attributes this change in testimony to Demetrius allegedly being present in the courtroom for the duration of Defendant's 2008 trial.

> Upon review of Demetrius's 2008 and 2011 testimony, the Court finds an objection to Demetrius's testimony would have been meritless. Demetrius's testimony did not substantially change due to the fact he was present in the courtroom during the 2008 trial. Instead, it differed because the State asked him to read all three letters in their entirety during the 2011

trial (Exs. G at 698-739; H at 869-84; J.)[14] Notably, the State admitted all three of Defendant's letters as exhibits during the first trial; however, Demetrius only read specific portions for the jury. (Exs. H at 869-84; K.) Thus, his testimony did not substantially change in content; he merely read the letters in full. As such, counsel cannot be deemed ineffective for failing to object to Demetrius's testimony because his testimony substantially changed, as the objection would have been meritless. Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010) (concluding counsel cannot be deemed ineffective for failing to make a meritless objection). Accordingly, Defendant is not entitled to relief.

Doc. 8-10 at 1-2. The First DCA affirmed the postconviction court's denial of relief and denied his motion for rehearing.

To the extent that the appellate court decided Wilder's ineffectiveness claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wilder is not entitled to relief on the basis of this ineffectiveness claim.

---

[14] Docs. 8-10 at 137-73; 8-11 at 7-22.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Wilder's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. Counsel cannot be deficient for failing to raise a meritless argument. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th 2005). As such, Wilder has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Wilder has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Wilder claims he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Wilder is not entitled to federal habeas relief on his ineffectiveness claim in ground four.

### D. Ground Five

As ground five, Wilder asserts that counsel was ineffective because he failed to file a notice of alibi defense. Petition at 16. According to Wilder, due to counsel's failure to file a notice, the trial court could not instruct the jurors on an alibi defense, which prohibited them from considering Wilder's alibi "as a mitigating factor." Id. at 17. He maintains that Leroy Brown was an available

alibi witness whom counsel failed to call.[15] Id. at 16-17. Respondents argue that Wilder did not exhaust this ineffectiveness claim in the state courts, and thus, the claim is procedurally barred. See Response at 42-45. The Court agrees that the claim has not been exhausted, and is therefore procedurally barred since Wilder failed to raise the claim in a procedurally correct manner. Wilder has not shown either cause excusing the default or actual prejudice resulting from the bar.[16] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Wilder's ineffectiveness claim is not procedurally barred, Wilder is not entitled to relief. Counsel did not request an alibi jury instruction because he did not pursue an alibi defense.[17] Given the State's exceedingly strong evidence against Wilder, counsel may have decided that a trial strategy of calling Brown, a convicted felon, as an alibi witness was not the best defense

---

[15] See Section B (Ground Two discussion).

[16] "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1309. As discussed in the alternative merits analysis that follows, this ineffectiveness claim lacks any merit. Therefore, Wilder has not shown that he can satisfy an exception to the bar.

[17] On August 11, 2008, counsel (Refik W. Eler) filed a notice of alibi, stating that Wilder asserted he was with Leroy Brown and/or "Jewel" at the time of the crimes. See Docs. 8-11 at 173; 8-4 at 15, 18; 8-11 at 49, 52 (Wilder's letter to Demetrius describing "Jewel").

strategy. Moreover, as previously discussed, upon the trial court's inquiry, Wilder acknowledged that counsel neither refused to call any witnesses that Wilder wanted nor failed to perform as Wilder instructed. <u>See</u> Doc. 8-4 at 115.

On this record, Wilder has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Wilder has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Wilder asserts he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Wilder is not entitled to federal habeas relief on his ineffectiveness claim in ground five.

### E. Ground Six

As ground six, Wilder asserts that counsel was ineffective because he failed to impeach State witness David Edwards' 2011 trial testimony (regarding telephone calls made between Michelle Walker's phone to Edwards' phone during the early morning hours on the day of the shooting) with Edwards' 2008 trial testimony. Petition at 18-19; Reply at 12-13. Wilder submitted excerpts of Edwards' 2011 trial testimony, Doc. 9-11 at 2-4, and his 2008 trial testimony, <u>id.</u> at 7-9. Wilder maintains that the State sought to establish that he had Michelle Walker's phone when the crimes were

35

committed, and if counsel had impeached Edwards' testimony, "there is a high probability that there would have been a difference in the trial outcome." Reply at 13. Respondents argue that Wilder did not exhaust this ineffectiveness claim in the state courts, and thus, the claim is procedurally barred. See Response at 49-50. The record reflects that Respondents are correct. Wilder did not exhaust this claim, and it is therefore procedurally barred since Wilder failed to raise the claim in a procedurally correct manner. Wilder has not shown either cause excusing the default or actual prejudice resulting from the bar.[18] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Wilder's ineffectiveness claim is not procedurally barred, Wilder is not entitled to relief. Counsel extensively cross-examined Edwards during the 2011 trial, Doc. 8-3 at 506-17, and asserted during closing argument that Edwards lied on the stand, Doc. 8-4 at 173. Upon review of Edwards' 2011 testimony (Doc. 8-3 at 495-518) and his 2008 testimony (Doc. 8-11 at 110-71), Wilder has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Wilder has

---

[18] As discussed in the alternative merits analysis that follows, this ineffectiveness claim lacks any merit. Therefore, Wilder has not shown that he can satisfy an exception to the bar.

36

not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Wilder claims he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Wilder is not entitled to federal habeas relief on his ineffectiveness claim in ground six.

## F. Ground Seven

As ground seven, Wilder asserts that counsel was ineffective because he failed to impeach the identification testimony of Keonna Diamond and Detective Glenn Warkentien. Petition at 20-22. Once again, Respondents argue that Wilder did not exhaust this ineffectiveness claim, and thus, the claim is procedurally barred. See Response at 54-55. And, the record reflects that Respondents are, again, correct. As such, the claim is procedurally barred since Wilder failed to raise the claim in a procedurally correct manner. Wilder has not shown either cause excusing the default or actual prejudice resulting from the bar.[19] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

---

[19] As with his other procedurally barred claims, the alternative merits analysis that follows reflects that this ineffectiveness claim lacks any merit. Thus, Wilder has not shown that he can satisfy an exception to the bar.

Even assuming Wilder's ineffectiveness claim is not procedurally barred, Wilder is not entitled to relief. The record establishes that counsel did cross-examine both Diamond and Warkentien regarding their identification testimony, and also commented on their testimony during closing argument. Docs. 8-3 at 100-113, 489-93; 8-4 at 144-84. Wilder fails to suggest what counsel should have done differently, or why his cross-examination was inadequate. On this record, Wilder has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Wilder has not shown any resulting prejudice. He fails to present any evidence suggesting that a reasonable probability exists that the outcome of the case would have been different if counsel had performed as Wilder suggests. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Wilder is not entitled to federal habeas relief on his ineffectiveness claim in ground seven.

## G. Ground Eight

As ground eight, Wilder asserts that the cumulative effect of his counsel's errors (as alleged in grounds two through seven) deprived him of a fair trial. Petition at 23-24; Reply at 15. Wilder raised the cumulative error claim in his Rule 3.850 motion (ground nine). Doc. 8-8 at 83. The postconviction

court ultimately denied the Rule 3.850 motion with respect to the claim, stating

in pertinent part:

> Defendant maintains the cumulative impact of counsel's deficiencies deprived him of a fair trial. It is well settled that a claim of cumulative error cannot stand in cases where, following individual evaluation, alleged errors are found to be without merit or procedurally barred. Lukehart v. State, 70 So. 3d 503, 524 (Fla. 2011); see Suggs v. State, 923 So. 2d 419, 442 (Fla. 2005) (holding that when a defendant does not successfully prove any of his individual claims and, consequently, counsel's performance is deemed sufficient, a claim of cumulative error must fail); Parker v. State, 904 So. 2d 370, 380 (Fla. 2005) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit."). Here, Defendant has not demonstrated that counsel was ineffective under either prong of Strickland. Accordingly, Defendant is not entitled to relief.

Doc. 8-10 at 5-6. The First DCA affirmed the postconviction court's denial of

relief and denied Wilder's motion for rehearing.

To the extent that the appellate court decided Wilder's claim on the

merits, the Court will address the claim in accordance with the deferential

standard for federal court review of state court adjudications. After a review of

the record and the applicable law, the Court concludes that the state court's

adjudication of the claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of the

39

evidence presented in the state court proceedings. Thus, Wilder is not entitled to relief on the basis of the cumulative error claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Wilder's claim is without merit because the record fully supports the postconviction court's conclusion. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012); Lundberg v. Sec'y, Fla. Dep't of Corr., 808 F. App'x 725, 738 (11th Cir. 2020). As explained in greater detail above, each of Wilder's ineffectiveness claims is meritless. Thus, his assertion of cumulative error is likewise without merit. Accordingly, Wilder is not entitled to federal habeas relief on his claim in ground eight.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Wilder seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Wilder "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were

'adequate to deserve encouragement to proceed further,'" <u>Miller-El</u>, 537 U.S. at 335-36 (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Wilder appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending

41

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of June, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-1 6/7
c:
Isaac Wilder, FDOC #126521
Counsel of Record